UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ERIC MCKINNEY, an individual, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 2:11-cv-02081-GMN-VCF |
| | ) **ORDER** |
| SANDS EXPO & CONVENTION CENTER, | ) |
| INC., a Nevada corporation; LISA WITHERELL, | ) |
| an individual; DONNA BARRICKLOW, an | ) |
| individual; ASHLYN LAPORTE, an individual; | ) |
| and ANSARY (CJ) SIYWASH, an individual. | ) |
| | ) |
| Defendants. | ) |
| | ) |

Pending before the Court is a Motion to Dismiss (ECF No. 17) and a Motion for Summary Judgment (ECF No. 30), filed by Defendants Sands Expo & Convention Center, Lisa Witherell, Donna Barricklow, Ashlyn LaPorte and CJ Ansary. For the reasons discussed below, Defendants' Motion to Dismiss is granted. Consequently, the Complaint will be dismissed, and the Motion for Summary Judgment will be denied without prejudice.

**I.   BACKGROUND**

This case is an employment discrimination and retaliation action arising out of the termination of Plaintiff Eric McKinney ("Plaintiff"). Plaintiff was an employee of Defendant Sands Expo & Convention Center, Inc. ("Sands"). Plaintiff also includes in the action Sands' Custodial Manager, Lisa Witherell ("Witherell"); Director of Human Resources, Donna Barricklow ("Barricklow"); Executive Director of Event Management, Ashlyn LaPorte ("LaPorte"); and Assistant Custodial Manager and Plaintiff's immediate supervisor, CJ Ansary ("Ansary") (collectively, "Defendants").

**A.  Allegations in the Complaint.**

*1.  Failure to Promote*

Plaintiff identifies himself in the Complaint as "the only black male in the custodial department since 2008," who worked for Sands as a Custodial Supervisor from July 25, 2005 until his termination on April 19, 2010. (ECF No. 6, page 3)  The Complaint alleges that on or around December 2008, LaPorte and Barricklow hired Witherell to be Assistant Custodial Manager.  Later, in March of 2009, LaPorte and Barricklow hired Bernard Cuthbert, a white male, for the same position.  Mr. Cuthbert was only employed for seven (7) months and LaPorte and Barricklow replaced him by promoting Ansary to the position of Assistant Custodial Manager.  None of these individuals were black.  Plaintiff was never offered the job despite his greater experience and longer tenure with Sands.  Additionally, after his promotion, Ansary did not assign Plaintiff English-speaking leads to help with shows.

*2.  Disciplinary Actions*

On October 23, 2009, Plaintiff was written up for missing a booth cleaning.  On October 25, 2009, Plaintiff discussed this citation in a meeting with Witherell, where it was decided that the discipline was unwarranted and the citation was voided.  Then, on November, 4, 2009, due to scheduling confusion and working back-to-back graveyard and day shifts, Plaintiff overslept and arrived to work late.  Plaintiff was subsequently written up for tardiness.  This was the first time in four years that Plaintiff had been written up for tardiness and no other salaried employee arriving late for a shift had received such a citation.  Nonetheless, at a meeting the next day, Plaintiff was presented with a citation for his tardiness on November 4, 2009 and the October 23, 2009 citation was reinstated.  Subsequently, on December 4, 2009, Plaintiff complained to Human Resources that the citations were unfairly issued given the circumstances.  Plaintiff also inquired what disciplinary actions had been taken against another employee, a Floor Coordinator, who arrived for a shift late and intoxicated.

Additionally, on February 18, 2010, Plaintiff called in sick and used one of five annually allotted sick days. Upon returning to work the following day, Plaintiff was written up for using a sick day. Two of Plaintiff's co-workers, who held the same position as Plaintiff, additionally called in sick the same day as Plaintiff. One, a white female, was disciplined; another, a female of mixed race (black and white) was not disciplined.

### 3. Termination

On April 18, 2010, Plaintiff called to inform his immediate supervisor that he boarded the incorrect bus due to a bus schedule change and was going to be late. He also called a co-worker to pick him up at a nearby bus stop to avoid any further tardiness. Upon arriving to work, however, Defendant was written up for insubordination and sent home. The next day, Plaintiff was terminated for tardiness, insubordination, and consistent disciplinary matters. The white co-worker who had picked up Plaintiff after he ended up at the wrong bus stop was also terminated. The described incidences notwithstanding, Plaintiff had the best attendance record of any Custodial Supervisor employed with Sands, and many of the tardy infractions listed in the termination charge had never occurred. Additionally, the charge of insubordination was untrue.

### B. Procedural Facts

On September 2, 2010, Plaintiff filed a Charge of Discrimination ("the Charge") with the EEOC and cross-filed with the Nevada Equal Rights Commission. The Charge alleged racial discrimination and retaliation. On September 29, 2011, the EEOC dismissed the Charge and issued Plaintiff a Right to Sue letter. Plaintiff then filed this action *pro se* in federal court on December 23, 2011, alleging racial discrimination, retaliation, wrongful termination, and defamation of character. Defendants now move to dismiss the complaint for failure to state a claim.

## II. LEGAL STANDARD

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief

1 can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and
2 plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.
3 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A district court must accept as
4 true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled
5 to the assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Mere recitals of the
6 elements of a cause of action, supported only by conclusory statements, do not suffice. *Id*. at 678.

7 While Rule 8 does not require detailed factual allegations, it demands "more than labels
8 and conclusions" and "[f]actual allegations must be enough to rise above the speculative level."
9 *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a complaint must contain sufficient
10 factual matter to "state a claim to relief that is plausible on its face." *Id.* at 570. When the claims
11 in a complaint have not crossed the line from conceivable to plausible, the plaintiff's complaint
12 must be dismissed. *Id*.

13 However, the Court also notes the well-established rule that *pro se* complaints are subject
14 to "less stringent standards than formal pleadings drafted by lawyers" and should be "liberally
15 construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). This is particularly
16 true in civil rights cases. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir.
17 1988) (holding that courts must afford *pro se* plaintiffs "the benefit of any doubt").

18 **III.  DISCUSSION**

19 Defendants argue that Plaintiff's claim for failure to promote is time-barred and that the
20 remainder of Plaintiff's complaint lacks factual allegations supporting all elements of the listed
21 causes of action. The Court agrees.

22     **A.  Failure to Promote**

23 Prior to filing a civil complaint, a victim of employment discrimination must file a timely
24 Charge of Discrimination with the EEOC. *Lyons v. England*, 307 F.3d 1092, 1104 (9th Cir.
25 2002). Where the charge is also brought before a state agency, the Plaintiff must file with the

EEOC within 300 days after the date the alleged discriminatory employment practice occurred. 42 U.S.C. § 2000e-5(e)(1).  Upon expiration of this time period, the claim for the discriminatory act is time-barred and not actionable. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  Although "this time period is subject to equitable doctrines such as tolling or estoppel," such doctrines are to be applied sparingly. *Id*. at 114.  Accordingly, discrete, easily identifiable acts, such as failure to promote, must be brought strictly within the applicable time period. *See id*. at 114-15.

Plaintiff brought the Charge of Discrimination before the EEOC on September 2, 2010.  Because Plaintiff also brought the Charge before a state agency, the 300-day time period applies and all actionable allegations must have occurred on or after November 6, 2009.  Because the latest of Plaintiff's alleged failed promotions occurred in October of 2009, the claim is time-barred and not actionable.[1]  Accordingly, the Court dismisses Plaintiff's failure to promote claim.

### B. Race Discrimination

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race. . . ." 42 U.S.C. § 2000e-2(a)(1).  Under Title VII, a person suffers discrimination in his employment "when he or she is 'singled out and treated less favorably than others similarly situated on account of race.'" *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1121(9th Cir. 2004) (internal quotation marks omitted) (quoting *Jauregui v. City of Glendale*, 852 F.2d 1128, 1134 (9th Cir. 1988)).  To state a claim under Title VII, a plaintiff must allege: (1) that the plaintiff belongs to a class of persons protected by Title VII; (2) that the plaintiff

---

[1] Additionally, Plaintiff's first two disciplinary actions fall before this cut-off date.  However, the crux of Plaintiff's racial discrimination claim is his termination.  The disciplinary acts complained of, are cited as evidence that the reasons cited for Plaintiff's termination were pretextual.  Time-barred acts may still be used as background evidence in support of a timely claim. *Nat'l R.R.*, 536 U.S. at 113.  Thus, the disciplinary actions that took place before the cut-off date are still relevant as background evidence of pretextual termination.

performed his job satisfactorily; (3) that the plaintiff suffered an adverse employment action; and (4) that the plaintiff's employer treated the plaintiff differently than a similarly situated employee who does not belong to the same protected class as the plaintiff. *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004).

Plaintiff has not adequately pled a claim for racial discrimination with respect to either the disciplinary actions or his termination because Plaintiff's Complaint does not contain the allegation required by law, that similarly situated, non-black employees were treated more favorably than Plaintiff. With respect to the citation for missing a booth clean-up, Plaintiff does not allege that similarly situated employees not of his race were given more favorable treatment in similar circumstances. Likewise, Plaintiff's allegation that Ansary did not assign Plaintiff any English-speaking leads fails to state that Custodial Supervisors of other races were assigned English-speaking leads. Thus, Plaintiff's allegations—even if the actions were unfair or unwarranted—are insufficient to draw an inference of racial discrimination.

Similarly, with respect to the November 5, 2009 citation for tardiness, Plaintiff alleges that he was the only employee cited for tardiness even though "everyone" at some point had been tardy. Assuming that by the use of the term "everyone" Plaintiff is referencing similarly situated employees, this allegation only shows that Plaintiff was treated differently from similarly situated employees; the allegation fails to detail that the disparate treatment was motivated by Plaintiff's race or that none of the similarly situated, tardy employees was black.[2] Because the Complaint lacks the specificity with respect to the racial component of the claim, the Court cannot infer that Defendants' differential treatment of Plaintiff was driven by Plaintiff's race.

Plaintiff's Complaint does contain two specific allegations that Ansary and a Floor

---

[2] Plaintiff does allege that he was the only black male Custodial Supervisor employed with Sands. However, the Complaint also references other black Custodial Supervisors.

Coordinator, both not of Plaintiff's race, were late for shifts and not disciplined. However, the Complaint also details that Ansary, who held a higher position than did Plaintiff, emailed in advance to inform everyone of a doctor's appointment. Both Ansary's position and the circumstances of his tardiness make him not similarly situated to Plaintiff. Additionally, the Complaint details only that Plaintiff was suspicious and *inquired* whether the Floor Coordinator was disciplined; the Complaint does not detail that Plaintiff ever confirmed his suspicions. Consequently these allegations are likewise insufficient to infer disparate treatment based on race.

Finally, with respect to the citation for using a sick day and Plaintiff's ultimate termination, Plaintiff alleges that similarly situated employees of other races were treated *similarly* to Plaintiff. The Complaint details that when Plaintiff was cited for using a sick day, a white custodial supervisor was also cited for the same action.[3] Further, when Plaintiff was terminated, he was terminated along with a white employee involved in the same incident culminating in Plaintiff's termination. Because the Complaint alleges that different races were treated similarly, the Court cannot infer racial discrimination on Defendants' part.

### C. Retaliation

Title VII similarly prohibits an employer from retaliating against an employee who opposes unlawful employment acts. *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011). To establish a prima facie case for retaliation under Title VII, an employee must show (1) that he engaged in a protected activity, (2) he subsequently experienced an adverse employment action, and (3) a causal link exists between the two. *Id*. "The causal link can be inferred from circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and the adverse action." *Id*.

---

[3] The Complaint additionally alleges that a mixed race (black and white) Custodial Supervisor was not disciplined suggesting that similarly situated employees of the *same* protected class were treated dissimilarly, and further prohibits the inference of racial discrimination.

Plaintiff's allegation that his April 19, 2010 termination was motivated by retaliation for Plaintiff's December 4, 2009 complaint to human resources is insufficient to state a claim for retaliation. There is nothing in the Complaint that suggests that Plaintiff's complaint to the HR department contained anything related to racial discrimination. Rather, the inference of the Complaint is that Plaintiff complained about the voided citation being reinstated, and being cited for tardiness due to his supervisor's mismanagement of the work schedule. Thus, it does not appear that the Plaintiff's complaint to HR was related to activity protected under Title VII.

However, even if it was, it is unreasonable to draw the inference that the HR complaint and termination were causally connected. Plaintiff's termination did not occur until more than four months after the complaint. This is too long a time for an inference of causality. *See, e.g.*, *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (3–month period insufficient to establish causal connection); *Hughes v. Derwinski*, 967 F.2d 1168, 1174–1175 (7th Cir. 1992) (4–month period insufficient). This is especially true considering that Plaintiff was also subject to additional disciplinary actions within those four months. Consequently, the retaliation claim fails.

### D. Wrongful Termination[4]

Under Nevada law, wrongful termination is generally a cause of action requiring an employment contract which specifies that termination may only be for cause. *See Am. Bank Stationery v. Farmer*, 799 P.2d 1100 (Nev. 1990). However, an exception exists under which an employer may be subject to liability for the termination of an at-will employee where the termination violates public policy. *Bigelow v. Bullard*, 901 P.2d 630, 631 (Nev. 1995). In these cases, "the employee must be able to establish that the dismissal was based upon the employee's refusing to engage in conduct that was violative of public policy or upon the employee's engaging in conduct which public policy favors." *Id*. at 632 (citing *D'Angelo v. Gardner*, 819

---

[4] The Court has supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367(a).

P.2d 206, 215-16 (Nev. 1991)).

Plaintiff's Complaint does not allege any facts outside those detailing racial discrimination that would allow this claim to survive independently. Thus, because the Court has dismissed the racial discrimination claims, the Court dismisses the wrongful termination claim as well.

### E. Defamation

To state a claim of defamation, a plaintiff must prove: "(1) a false and defamatory statement by [the] defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Pegasus v. Reno Newspapers, Inc.*, 57 P.3d 82, 90 (Nev. 2002).

Plaintiff's allegations are insufficient to state a claim for defamation. Plaintiff's defamation claim rests on the allegations that some of the instances cited in the termination charge for tardiness, insubordination, and consistent disciplinary matters were fabricated and that Plaintiff has not been able to obtain work since being fired. However, Plaintiff has not alleged that Defendants published the information in his termination charge. Consequently, Plaintiff has not pled all the requisite elements of the claim.

### F. Dismissal

The Court grants Defendants' Motion and dismisses Plaintiff's Complaint. Because the failure to promote claim is time-barred, that claim is dismissed with prejudice. The remaining claims are dismissed without prejudice and Plaintiff may seek amendment, provided that any Motion to Amend is brought **Monday, July 22, 2013**. Failure to file a Motion to Amend by that date will result in dismissal with prejudice.

Because the Complaint is dismissed, Defendants' Motion for Summary Judgment is denied without prejudice. If Plaintiff files an amended complaint that cures the deficiencies described in this Order, Defendants may renew their Motion.

### IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants Sands Expo & Convention Center, Lisa Witherell, Donna Barricklow, Ashlyn LaPorte and CJ Ansary's Motion to Dismiss (ECF No. 17) is **GRANTED**, and Plaintiff's Complaint is hereby **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendants Sands Expo & Convention Center, Lisa Witherell, Donna Barricklow, Ashlyn LaPorte and CJ Ansary's Motion for Summary Judgment (ECF No. 30) is **DENIED without prejudice**.

**IT IS FURTHER ORDERED** that Plaintiff may seek amendment as reflected in this Order, provided that any Motion to Amend is brought **Monday, July 22, 2013**. Failure to file a Motion to Amend by that date will result in **DISMISSAL with prejudice**.

DATED this 26th day of June, 2013.

_____
Gloria M. Navarro
United States District Judge